Decided January 22, 1988

LARRY L. HILLBLOM and JAMES )          CIV. NO. 87-0015
S. SIROK,                     )
                              )
    Plaintiffs,          )
                              )
      v.                )
                              )
UNITED STATES OF AMERICA,     )
(Don Hodel, Edwin             )
Meese) and CNMI, (Juan Diaz   )          MEMORANDUM DECISION
in Official Capacity as       )
Executive Director, Board     )
of Election)                  )
                              )
    Defendants.          )
_____ )

      Plaintiffs Larry L. Hillblom and James S. Sirok filed this action against the United States and the CNMI seeking a declaration of rights and injunctive relief. The CNMI Senate later intervened. Plaintiffs' main contention is that the CNMI's Senate apportionment scheme and land alienation restrictions are contrary to the United States Constitution. But they seek to have this Court determine that these anomalies are valid since in their view, the United States does not exercise sovereignty in the CNMI. In the alternative, plaintiffs request that the Court declare that the United States possesses sovereignty over the CNMI and, therefore, the provisions which allow for a disproportionate Senate and restrictions on land alienation are unconstitutional and must be struck down. For the reasons set out herein, the motion for judgment on the pleadings is granted.

## FACTS

Japan governed the Mariana Islands under a mandate from the League of Nations from 1920 until the final days of World War II when the islands were liberated by American and Allied forces. Following the war, in 1945, the United Nations came into existence.[1] Article 75 of the United Nations Charter provided for an international trusteeship system to administer what the United Nations designated as trust territories. Article 76 set out the objectives of the trusteeship system which, for purposes germane to this case, included the development of territories towards self-government or independence, as appropriate, and as the freely expressed wish of the people. In 1947, the United States was designated by the United Nations as the administering authority of the Trust Territory of the Pacific Islands, which included the Northern Mariana Islands.

In 1969, the United States began negotiations with the people of the Trust Territory in an effort to resolve the future political status of the islands in conformance with the objectives of the United Nations Charter. The negotiations stagnated because the sociological and political make-up of the islands was not homogeneous and the divergent political wants and needs of the various island groups prevented large-scale compromises. In 1972, the focus of the negotiations shifted from

---

[1]    The United Nations Charter was signed on June 26, 1945, and came into force on October 24, 1945. Introductory Note to Charter of the United Nations and Statute of the International Court of Justice.

achieving a single agreement with all of the people of all of the islands to reaching separate agreements with each island group.

The Northern Mariana Islands consists of fourteen islands, only three of which have been inhabited during modern times: Tinian, Rota, and Saipan. Negotiations between the Northern Mariana Islands and the United States between 1972 and 1975 covered numerous concerns of both parties. For example, members of the Rota and Tinian delegations were concerned that the more populated Saipan would be able to control political power in the Northern Mariana Islands. It also was recognized that the scarcity of land in the Northern Mariana Islands and the relatively limited financial means of the Northern Mariana Islands' people could result in the dissipation of local land ownership through sales to non-indigenous persons. Negotiators for both sides also realized that the United States jury system would be difficult, perhaps impossible, to administer because of the consanguinity and cultural ties in a community as small as the Northern Mariana Islands. Resolving these fundamental concerns was imperative because without the compromises "the accession of the Northern Mariana Islands to the United States would not have been possible. Marianas Political Status Commission, Report of the Joint Drafting Committee 3 (1975)." CNMI v. Atalig, 723 F.2d 682, 685-686 (9th Cir.), cert. denied, 467 U.S. 1244 (1984).

The negotiations culminated in the "Covenant to Establish a Commonwealth of the Northern Mariana Islands in

**297**

Political Union with the United States" (Covenant). To accommodate the unique political and social composition of the Northern Mariana Islands, the Covenant provided for at least three distinct divergences from conventional United States prac·ices.

Section 203(c) mandated that the CNMI Constitution provide for equal representation for each of the chartered municipalities[2] of the Northern Mariana Islands in one house of its bicameral legislature despite the apparent repugnancy to United States laws and the United States Constitution.

Section 501 dispensed with grand juries and jury trials for violations of local laws except as specifically provided in the Northern Mariana Islands' Constitution and laws.

The third anomaly, Section 805, restricted land alienation to persons of Northern Mariana Island descent.

In 1975, the Covenant was approved by 78% of Northern Mariana Island voters in a plebiscite. It was subsequently approved by the United States Congress and ratified by President Jimmy Carter, becoming Public Law 94-241.

Not long after its passage, the Covenant withstood its first challenge in CNMI v. Atalig. In 1981, Daniel Atalig was charged by information and convicted in a Commonwealth bench trial of possessing marijuana. He challenged the constitutionality of the jury trial provision of Covenant §501.

---

[2] The chartered municipalities are Rota, Tinian, and Saipan at present.

The Ninth Circuit held that this practice did not violate the United States Constitution as it applies to the Northern Mariana Islands and affirmed Atalig's conviction. Applying the reasoning of the so-called "Insular Cases," the Court found that though the jury trial system in the United States is a fundamental right as that term is used in the Bill of Rights, i.e., Duncan v. Louisiana, 391 U.S. 145 (1968), it is not a fundamental right for purposes of territorial incorporation since it is not "one of 'those fundamental limitations in favor of personal rights' which are the basis of all free government'." CNMI v. Atalig, 723 F.2d at 690, citing Dorr v. United States, 195 U.S. 138, 146 (1904). According to the Ninth Circuit, the "unique political status" of the Commonwealth justified a divergence from conventional United States practices.

In the present action, plaintiffs challenge the remaining two unusual Covenant provisions: the disproportionate Senate composition and the land alienation restrictions.

Plaintiffs allege that these two provisions violate the Fifth and Fourteenth Amendments of the United States Constitution. According to plaintiffs, however, the Court does not have to strike these provisions if it finds that the United States does not exercise sovereignty over the CNMI because, in that situation, citizens of the CNMI would not be entitled to the full panoply of rights afforded by the United States Constitution. In the alternative, if the Court determines that the United States does exercise sovereignty over the CNMI, then

the full force and effect of the United States Constitution and laws does apply to the Commonwealth and these provisions must be struck down.

## JURISDICTION

Plaintiffs cite 28 U.S.C. §1331 as the basis for the Court's jurisdiction. Section 1331 vests district courts with original jurisdiction to entertain all civil actions arising under the Constitution, laws, or treaties of the United States.[3/]

Plaintiffs' challenge to the Covenant falls within the purview of §1331 because the Covenant is a federal law (P.L. 94-241, 90 Stat. 263), approved by Congress, and signed by the President. Further, plaintiffs allege that certain sections of the Covenant violate the United States Constitution, allegation which clearly fall within 28 U.S.C. §1331.

Plaintiffs cite alternative grounds for invoking this Court's jurisdiction including the Trusteeship Agreement, which is technically a treaty, and Covenant §903. Plaintiffs assert that §903 so expands this Court's jurisdiction as to allow it to render essentially advisory opinions on Covenant provisions. This Court need not and does not rely on these alternative bases because jurisdiction exists under §1331.

---

[3/]  This Court exercises jurisdiction equivalent to that of a United States district court pursuant to 48 U.S.C. §1694a(a).

## STANDING

Intertwined with statutory limitations on a federal court's jurisdiction is Article III of the United States Constitution which precludes federal courts from entertaining suits absent an actual case or controversy. Plaintiffs are "CNMI citizens" and residents of Saipan but are not of Northern Mariana Islands descent. They have not alleged that they are voters nor have they alleged that they have been precluded from obtaining fee simple absolute title to land as a consequence of Covenant §805. Either or both of these statements is necessary to establish standing in this lawsuit.

Plaintiffs primarily rely on three cases to support their position that they have standing to bring this lawsuit: Baker v. Carr, 369 U.S. 186 (1962); Mora v. Mejias, 206 F.2d 377 (1st Cir. 1953); and CNMI v. Atalig, 723 F.2d 682 (9th Cir.), cert. denied, 467 U.S. 1244 (1984).

In Baker v. Carr, the Supreme Court ruled that qualified voters in Tennessee had standing to challenge the legislative apportionment scheme for the Tennessee General Assembly. Plaintiffs herein have neglected to allege that they are qualified voters. In Mora v. Mejias, a grain dealer subject to a price-control order issued by the Commonwealth of Puerto Rico challenged its constitutionality. Under the order, Mora was required to sell rice at or below a specified retail price. Wholesale rates were also regulated under the order. Mora, a rice vendor, claimed that the order resulted in a confiscation of

his property because he was being forced[4/] to sell rice at less than what he paid for it. Clearly, Mora had standing to question whether this order violated his constitutional rights; he suffered from its direct effects, unlike plaintiffs herein.

Finally, Plaintiffs cite CNMI v. Atalig. Atalig was tried and convicted of possession of marijuana, an offense which carried a maximum term of incarceration of one year and a fine of $1,000. Under CNMI law, Atalig was not entitled to a jury trial, though he would have been entitled to one under United States law. The trial court below, this Court, and the Ninth Circuit all found that Atalig had standing to challenge the jury trial system because he was directly subjected to it.

Plaintiffs have not alleged either that they are voters or that they have made efforts to purchase land and that their efforts have been stymied by the provisions of the Covenant or the Constitution of the Commonwealth of the Northern Mariana Islands. The lack of these jurisdictional prerequisites, which are necessary for an actual case or controversy, is sufficient to dismiss this suit. However, the Court also includes as a ground for dismissal its determination that the issues raised by plaintiffs are political questions.

---

4/ A provision of the act under which the order was issued subjected Mora to penalties for refusing to sell rice at the specified price.

The complaint on its face states that plaintiffs are challenging the constitutionality of the Senate apportionment and land alienation provisions of the Covenant, which were later implemented through the CNMI Constitution. Though sounding initially as a suit in equity seeking injunctive relief to strike these provisions as unconstitutional, the suit also seeks alternative relief in the form of a declaratory judgment that these provisions are, instead, valid. The declaratory judgment plaintiffs seek would declare that the United States does not exercise sovereignty over the Commonwealth and, therefore, that the United States Constitution does not apply in toto in the Commonwealth. Plaintiffs contend that the ultimate question in this case is, "what is the character of United States sovereignty over the Northern Mariana Islands?" Memorandum of Points and Authorities in Support of Plaintiffs' Request for Preliminary Injunction, p.3. Plaintiffs perceive the ultimate conclusion as an either/or proposition. Either the United States possesses complete sovereignty over the Commonwealth and the United States Constitution applies, or the United States does not possess sovereignty over the Commonwealth and the United States Constitution does not apply. The challenged Covenant provisions cannot stand, according to plaintiffs, if the United States possesses sovereignty over the Commonwealth. The Court does not view this issue in the same light as plaintiffs.

The political relationship between the United States

and the Commonwealth is <u>sui generis</u>. The very first section of the first Article of the Covenant attempts to define the relationship between the two:

> Section 101. The Northern Mariana Islands upon termination of the Trusteeship Agreement will become a self-governing Commonwealth to be known as the Commonwealth of the Northern Mariana Islands," in political union with and <u>under the sovereignty of the United States of America</u>. (Emphasis added).

The question then becomes what are the parameters of United States sovereignty in the Commonwealth. The extent to which the United States exercises sovereignty over the CNMI is not that which it exercises over the territories of Guam or Puerto Rico. Plaintiffs' goal of a far-reaching either/or determination not bound by the strictures of an acutal case or controversy is ill-advised, and would require this Court to ignore the time-honored stricture of an actual case on controversy.

The Covenant is the result of a lengthy political process which involved negotiations between the Executive Branch of the United States government and the representatives of the Northern Mariana Islands government. It is the result of compromises on both sides. The Covenant and the "Analysis of the Covenant"[5] make it quite clear that without the provisions for the Senate and the land alienation restrictions, which <u>Atalig</u>

---

[5] <u>Section by Section Analysis of the Covenant to Establish a Commonwealth of the Northern Mariana Islands</u>, Marianas Political Status Commission.

304

defined as integral, there would not have been a Covenant. Eventually, the Covenant was approved by the people of the Northern Mariana Islands, the United States Congress, and the President the United States.

In _Atalig_, the Ninth Circuit determined that the United States would exercise sovereignty over the Commonwealth[6] yet it concluded that this fact would not preclude the abrogation of the right to a jury trial. The unique status of the political relationship between the two governments is not subject to an all-encompassing definition. The very meaning of the word "sovereignty", too, is difficult to articulate.

Covenant §902 anticipated the difficulties inherent in an agreement of this nature (which is unique in the annals of United States history) and provided that negotiations between the United States and the Commonwealth would continue after implementation of the Covenant. The question raised herein could, and perhaps should, be raised in that arena. But this Court concludes that as it is raised herein it is a nonjusticiable political question.

TERMINATION OF THE TRUSTEESHIP

On November 3, 1986, President Ronald Reagan issued

---

[6]   "[T]he NMI will become a self-governing commonwealth under United States sovereignty upon termination of the trusteeship. _CNMI v. Atalig_, 723 F.2d at 685.

**305**

Presidential Proclamation 5564 which, inter alia, terminated the United States' trusteeship over the Northern Mariana Islands. Covenant §1002 sets forth that the President's determination that the Trusteeship Agreement has been terminated is "final and not subject to review by any authority, judicial or otherwise." (Emphasis added)

Plaintiffs ask this Court to ignore the language of §1002, to look beyond the President's Proclamation and, after analyzing the United Nations Charter, determine that the President erred when he terminated the Trusteeship. Close examination of Articles 79, 83, and 85 reveals that there may be merit to plaintiff's argument that unilateral termination is contrary to the Charter. But that is not the issue before the Court. The United States and the Commonwealth agreed in Covenant §1002 that a Presidential Proclamation that the Trusteeship had ended would be final, i.e., non-reviewable. The language of §1002 is not precatory. Its clear and unambiguous language forecloses judicial analysis. The Court does not accept plaintiffs argument that §903 gives this Court jurisdiction to render essentially advisory opinions. Even if this were true, the general language of §903 is subsumed by the specific language of §1002. The Court will honor the language of §1002 and, based on Proclamation 5564, acknowledge that as between the CNMI and the United States the question of termination of the Trusteeship is not reviewable.

///

## THREE-JUDGE PANEL

Plaintiffs challenge the composition of the CNMI Senate claiming that its makeup, three senators per chartered municipality, violates the United States Constitution. They seek a preliminary injunction prohibiting newly-elected senators from being seated until the districts can be reapportioned and a special election held. CNMI defendants have requested that a three-judge panel be convened pursuant to 28 U.S.C. §2284.

Title 28 U.S.C. §2284 mandates that a district court of three judges shall be convened in an action challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body. A single judge may individually conduct most proceedings and enter most orders, but subsection (b)(3) specifically precludes a single judge from hearing an application for a preliminary or permanent injunction.

Title 48 U.S.C. §1694(c) applies the Federal Rules of Civil Procedure to the District Court for the NMI except as otherwise provided in Articles IV and V of the Covenant. Nothing in either of these sections mandates a finding that 28 U.S.C. §2284 does not apply here.

Section 2284 was intended to provide for three judges to rule on the constitutionality of a statewide legislative scheme. Malapportioned districts, those which result in some votes carrying greater weight than others, are contrary to the United States Constitution, which requires that all votes be

**307**

given equal weight. Congress anticipated that these schemes would necessitate reapportionment. A matter as crucial as reapportionment could not be left to a single district judge but rather to a panel of three.

If this were in fact a challenge to the districting of the CNMI Senate it would require a three-judge panel. It is not. It is instead a challenge to the Covenant provision which mandates a malapportioned Senate. This suit does not ask the Court to determine if there is equality in voting. Instead, it asks if the existing inequality violates conventional United States practices. In this light, since apportionment is not involved, a three-judge panel is not required.

Motion for judgment on the pleadings is GRANTED, all other motions are denied. The complaint is dismissed.

DATED this 22nd day of January, 1988.

_____
Judge Alfred Laureta